**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

JAMES MCALPHIN,                                                                                      PLAINTIFF
ADC #088328

v.                                            2:13CV00145-DPM-JJV

N. OBI, Dr.; *et al.*                                                                              DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge D. P.

Marshall Jr.  Any party may serve and file written objections to this recommendation.  Objections

should be specific and should include the factual or legal basis for the objection.  If the objection is

to a factual finding, specifically identify that finding and the evidence that supports your objection.

An original and one copy of your objections must be received in the office of the United States

District Court Clerk no later than fourteen (14) days from the date of the findings and

recommendations.   The copy will be furnished to the opposing party.   Failure to file timely

objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a hearing for this purpose before the District Judge, you must, at

the same time that you file your written objections, include the following:

1.        Why the record made before the Magistrate Judge is inadequate.

2.        Why the evidence proffered at the hearing (if such a hearing is granted) was not

offered at the hearing before the Magistrate Judge.

3.        The details of any testimony desired to be introduced at the new hearing in the form

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial

evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.  Mail your objections and "Statement of Necessity" to:

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

## I. INTRODUCTION

James McAlphin ("Plaintiff") filed this action alleging that Defendants were deliberately indifferent to his serious medical needs. (Doc. Nos. 4, 9.)[1] Now, Defendants[2] have filed a Motion for Summary Judgment (Doc. No. 64) seeking dismissal of all claims against them. Plaintiff has responded (Doc. No. 73) and the matter is ripe for disposition.

## II. BACKGROUND

Plaintiff alleges he has several medical conditions for which he has not received adequate care. (Doc. Nos. 4, 9.) Specifically, he claims he was denied adequate treatment for: (1) testicular pain and infection resulting from the removal of a benign cyst; (2) poor vision which required prescription eye glasses; (3) heart issues which required prompt examination by a cardiologist; (4) pain, swelling, and infection in his right leg; and (5) diabetes. (Doc. No. 4 ¶¶ 3-27.) For their part, Defendants assert Plaintiff is unable to establish that they acted with deliberate indifference to any

---

[1]Initially, there were fourteen Defendants to this action; eleven have been dismissed, and only Plaintiff's claims against Defendants Obi, Ball, and Campbell remain. (Doc. Nos. 8, 15.)

[2]After review of Defendants' pleadings, the Court notes that 'N. Obi' is appropriately 'Nwannem Obi-Okoye', 'G. Campbell' is 'Geraldine Campbell', and 'Ball' is 'Don Ball.' The Clerk of Court shall alter the docket to reflect these changes.

of these medical issues. (Doc. No. 64 ¶ 5.) In support, Defendants have provided a chronology of

Plaintiff's appointments, prescriptions, and his lengthy treatment plan.  (Doc. No. 65-3.)  Where

relevant, the Court will refer to it in the analysis.

## III.    STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if

the pleadings, depositions, answers to interrogatories and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317,

321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in

a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th

Cir. 2002).   The nonmoving party may not rely on allegations or denials, but must demonstrate the

existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825

(8th Cir. 2007).   The nonmoving party's allegations must be supported by sufficient probative

evidence that would permit a finding in his favor on more than mere speculation, conjecture, or

fantasy.  *Id.* (citations omitted).  A dispute is genuine if the evidence is such that it could cause a

reasonable jury to return a verdict for either party; a fact is material if its resolution affects the

outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).

Disputes that are not genuine or that are about facts that are not material will not preclude summary

judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## IV.    ANALYSIS

Defendants advance two arguments in support of their Motion, namely that: (1) Plaintiff

failed to exhaust his administrative remedies against Dr. Ball, and (2) no Defendant was deliberately

indifferent to Plaintiff's medical issues. Plaintiff has offered responses to both of these arguments.

A.      Exhaustion

The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002).   Exhaustion under the PLRA is mandatory. *Jones*, 549 U.S. at 211.   "[T]o properly exhaust administrative remedies, prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Id.*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Compliance with a prison's grievance procedures is, therefore, all that is required by the PLRA to properly exhaust. *Id.*  Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See Id*.

Here, Defendants provide evidence that only two of Plaintiff's twenty-one medical grievances specifically name Dr. Ball. (Doc. No. 65-2.) They also contend that neither grievance which names Dr. Ball - EA-11-01309 and EA-11-01895 - exhausts any claim relevant to this action. Plaintiff argues that these two grievances *do* exhaust his claims against Dr. Ball. (Doc. No. 75 at 3-4.) He also argues that the unnamed 'provider' in grievance EA-11-01488 is a reference to Dr. Ball. Accordingly, the Court will review EA-11-01309, EA-11-01488, and EA-11-01895 in determining whether exhaustion has been met.

Grievance EA-11-01309 states that, after testicular surgery by an outside provider, Dr. Ball scheduled Plaintiff for "a consult" but he "should have seen a specialist and results obtained immediately." (Doc. No. 65-1 at 45.) Defendants assert that this grievance does not allege any wrongdoing on the part of Dr. Ball. (Doc. No. 65 ¶ 18.) The Court agrees insofar as EA-11-01309 does not exhaust any claim relevant to this lawsuit. Aside from the delayed consultation, no other

treatment by Dr. Ball is implicated by this grievance. And in his deposition testimony, Plaintiff distinguishes between the consult and Dr. Ball's treatment of his testicular pain and infection. (Doc. No. 65-4 at 21-22.) He explicitly testifies that he is suing over the latter and not the former. (*Id.*)[3]

Grievance EA-11-01488 alleges that Plaintiff was on the Health Services "lay-in" list for two days, but was not seen by a provider. (Doc. No. 65-1 at 48.) This grievance does not name Dr. Ball, but Plaintiff states the unit had only one provider at that time and it would have been obvious to reviewing officials that Ball was implicated. (Doc. No. 7 at 4.) The Arkansas Department of Correction's grievance requirements clearly mandate the specific identification of personnel, however. (Doc. No. 65-1 at 7.) If it was known to Plaintiff that Dr. Ball was the relevant provider, then he was required to identify him by name on the form. The Administrative Directive provides no exception for instances where the identity of a certain staff member is obvious to all inmates or personnel at a unit.

Courts have, in certain instances, excused the naming requirement where prison officials decide a flawed grievance on its merits. *See Bower v. Kelley*, 494 Fed. Appx. 718 (8th Cir. 2012) (per curiam). Other decisions have upheld dismissals based on a failure to specifically name. *See Jones v. Hobbs*, 2013 U.S. App. LEXIS 2698, at * 1-2 (8th Cir. Jan. 22, 2013). Courts in this district have taken to looking beyond a prisoner's grievances and instead examining those claims which prison officials actually reviewed in order to determine exhaustion. *See Doering v. Moore*, 2014 U.S.

---

[3]In his Response, Plaintiff argues that his deposition testimony intended only to state that Dr. Ball was not the individual responsible for performing the follow-up. (Doc. No. 75 at 6.) He claims he is still suing Dr. Ball for failing to "keep track" of the consult. (*Id.*) The Court declines to accept this argument. Plaintiff was asked about this subject explicitly at his deposition. (Doc. No. 65-4 at 21-22.) He stated he was not suing Defendant Ball for "not keeping the consult" but only for "not treating me for pain and infection and stuff like that..." (*Id.*) If he desired to draw a distinction between performing the consult and "keeping track" of it, he should have done so at his deposition. Now, Defendants have relied upon this testimony in preparing the current Motion, and Plaintiff will not be allowed to bend his earlier testimony to suit his needs.

Dist. LEXIS 146225, at * 7 (E.D. Ark. July 30, 2014). Here, there is no indication that EA-11-01488 prompted prison officials to review Dr. Ball's conduct. The grievance responses never mention Dr. Ball by name, and there is no evaluation of a provider for the alleged delay in care. In fact, Defendants contend that Dr. Ball no longer worked at the unit at the time this grievance was written. (Doc. No. 66 at 7.) Based on the foregoing, the Court declines to accept Plaintiff's argument that this grievance implicates Dr. Ball.

Finally, EA-11-01895 states only that Dr. Ball had previously prescribed Plaintiff a blood thinner and an ultrasound consult. (Doc. No. 65-1 at 57.) The grievance does not allege this course of treatment harmed Plaintiff in any way. Instead, the crux of the grievance is that, after those prescriptions were made, Dr. Obi refused to treat Plaintiff's medical issues. (*Id*.) Plaintiff has not offered any argument as to how this grievance might exhaust his claims against Dr. Ball.

Based on the foregoing, the Court finds that Plaintiff failed to exhaust his administrative remedies against Dr. Ball. It is, therefore, recommended that he be dismissed without prejudice. The Court will consider Defendants' remaining, merit-based arguments only with respect to Defendants Campbell and Obi. *See Barbee v. Correctional Medical Services*, 394 Fed. Appx. 337, 338 (2010) (concluding that the district court erred in reaching the merits of a plaintiff's claims against defendants who had successfully raised an exhaustion defense).

**B.    Deliberate Indifference Claims[4]**

The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Deliberate indifference to the

---

[4]The Court will analyze the testicular pain, eye care, cardiology, and leg swelling claims only with respect to Dr. Obi. Defendant Campbell is only implicated in Plaintiff's claims regarding his diabetic treatment.

serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (deliberate indifference includes intentional interference with prescribed treatment; inadvertent or negligent failure to provide adequate medical care cannot be said to constitute "unnecessary and wanton infliction of pain").

The United States Court of Appeals for the Eighth Circuit has explained:

> Prison doctors and guards violate the Eighth Amendment when they act with 'deliberate indifference to [an inmate's] serious medical needs.' 'Deliberate indifference' entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Likewise, an inmate's 'mere disagreement with the course of his medical treatment' fails to state a claim of deliberate indifference.

*Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (citations omitted).

      1.     Testicular Pain

Plaintiff was seen on April 4, 2012, due to his requests for prescription Tramadol. (Doc. No. 65 ¶ 31.) Dr. Obi concluded that acetaminophen, Plaintiff's current pain medication, was sufficient and Tramadol was unnecessary. (*Id*.) On August 8, 2012, still alleging testicular pain, Plaintiff was seen by Dr. Delk, an outside urologist, who instructed that a visit to a pain clinic was appropriate. (*Id*. ¶¶ 32-33.) After reviewing the urologist's recommendation, Dr. Obi concluded that starting Plaintiff on Tramadol was sufficient and a visit to a pain clinic was unnecessary. (*Id*. ¶ 34.) On September 26, 2012, Plaintiff returned to the clinic and complained that Tramadol was not relieving his pain. (*Id*. ¶ 35.) Accordingly, Dr. Obi increased his dose of Tramadol on October 2, 2012. (*Id*. ¶ 36.) On June 4, 2013, Dr. Obi determined that "controlled medications/narcotics" were no longer necessary to control Plaintiff's pain. (*Id*. ¶ 39.) Thereafter, Plaintiff would receive methocarbamol,

gabapentin, and naproxen for pain. (*Id*. ¶¶ 40-42.) Now, Plaintiff alleges that Dr. Obi's decision to not refer him to the pain clinic and her later decision to discontinue Tramadol amount to deliberate indifference. (Doc. No. 4 at 7.)

Defendants contend that Dr. Obi determined a visit to the pain clinic was unnecessary by reviewing Plaintiff's history of medical complaints, few of which reference testicular pain. (Doc. No. 66 at 13.) They provide the affidavit of Dr. Robert Floss who opines that referral to a pain clinic is generally not made in the absence of at least six months of 'failed treatment' - that is, attempted regimens which did not successfully relieve Plaintiff's pain. (Doc. No. 67 at 5-6.) Here, Dr. Floss opines that Tramadol was demonstrably effective and Dr. Obi's reliance on it was justified. (*Id*. at 6.) Dr. Floss also declares that Dr. Obi's decision to discontinue Tramadol in June 2013 was medically appropriate. (*Id*. at 5.)

Based on the foregoing, the Court finds that Dr. Obi's treatment of Plaintiff's testicular pain was not deliberately indifferent. First, Plaintiff cannot establish deliberate indifference based solely on his disagreement with Dr. Obi's treatment decisions. *See Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). The record clearly establishes that Dr. Obi took steps to control Plaintiff's testicular pain. That Plaintiff believed an alternative course of treatment would have proven more effective is insufficient. Second, an inmate cannot, in the face of medical records and physician affidavits, create a question of fact simply by stating that he did not feel his treatment was adequate. *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir.1997). Here, the records and testimony of Dr. Floss indicate that Plaintiff's pain treatment was adequate.[5] The Court recommends this claim be dismissed with

---

[5]The Court notes that Plaintiff motioned for the appointment of an expert in order to contest the testimony of Dr. Floss. (Doc. No. 71). The Court denied that Motion and stated that Plaintiff had no right to appointment of an expert at government expense. (Doc. No. 72). The Court understands that it is difficult, if not impossible, for an inmate to procure his own expert testimony in many cases. Nevertheless, both legal authority and practical constraints clearly militate in favor of denying such

prejudice as to Dr. Obi.

    2.    Eye Care

Plaintiff alleges that between unspecified dates in 2011 and 2013, he was not provided prescription eye glasses despite requesting them from Dr. Obi. (Doc. No. 4 at 7.) As a result, he claims his eyesight "deteriorated to legal blindness." (*Id*.) Defendants argue that Dr. Obi was only responsible for referring Plaintiff to an optometry consult and had no other involvement in his eye care. (Doc. No. 66 at 16.) The medical records reflect this referral to the eye clinic. (Doc. No. 65-3 at 142.) The affidavit of Dr. Floss notes that, upon examination by an optometrist, Plaintiff had simple vision impairment, a condition easily corrected by prescription lenses. (Doc. No. 67 at 6.) Dr. Floss also opines that any delay in consulting an optometrist did not cause Plaintiff any harm. (*Id*. at 7.)

The Court concludes, based on the evidence provided by Defendants, that a delay in providing Plaintiff eye care did not amount to deliberate indifference. While Plaintiff alleges the delay caused his vision to deteriorate, he has not provided any evidence. Absent such evidence, the Court finds that Plaintiff has failed to establish the necessary injury to support his claim. *See Calloway v. Miller,* 147 F.3d 778, 781 (8th Cir.1998) (to establish a section 1983 violation, a plaintiff must show that the defendant's alleged unconstitutional action was the "cause in fact" of his injury). This claim should be dismissed.

    3.    Cardiac Care

Plaintiff alleges that Dr. Obi delayed his cardiology consult from January to April 2012 despite the existence of unspecified heart problems and the need to remove "blockage." (Doc. No. 4 at 7.) Defendants state that Plaintiff received adequate cardiac care between January and April

---

requests.

2012, and provide medical records in support. (*See* Doc. No. 65-3 at 89-90, 99.) Records also note

that Plaintiff was approved for a cardiology consult in June 2012. (*Id*. at 116.) Dr. Floss opines that

Plaintiff's cardiac care in 2012 was adequate and any delay did not harm him. (Doc. No. 67 at 10.)

As before, Plaintiff has not offered any evidence that he was injured by the alleged delay in

seeing a cardiologist. The Court, therefore, recommends dismissal of this claim.

4.      Leg Swelling

Plaintiff alleges that Dr. Obi delayed treatment for pain, swelling, and infection in his leg.

(Doc. No. 4 at 7.) He claims that at the time of filing the initial Complaint (October 28, 2013), the

cause of his swelling had not been diagnosed. (*Id*.) Defendants state that Plaintiff first raised

complaints of leg swelling in July 2011. (Doc. No. 65-3 at 30.) After additional tests, it was

determined that Plaintiff might have a blood clot, and a blood thinner was prescribed in August

2011. (*Id.* at 32.) In October 2011, based on test results, Dr. Obi continued treating Plaintiff with

blood thinner. (*Id*. at 72-73.) Now, Plaintiff alleges that his prolonged exposure to blood thinner was

unnecessary and hazardous to his health. (Doc. No. 4 at 8.)

As with Plaintiff's eye care and cardiac claims, he does not state what, if any, injury was

caused by Dr. Obi's treatment of the leg swelling. The medical record indicates that prison medical

staff monitored and attempted to treat Plaintiff's leg swelling. Plaintiff's claim that the blood thinner

posed a threat to his health is purely speculative and he provides no evidence to support it. By

contrast, Dr. Floss states that Dr. Obi's decision to continue blood thinner during the relevant period

was medically appropriate. (Doc. No. 67 at 12.)  Based on Defendants' medical evidence and lack

of cognizable injury, the Court recommends this claim be dismissed.

5.      Diabetes

Plaintiff alleges that Defendants Campbell and Obi waited until May 2013 to prescribe

diabetic medication. (Doc. No. 4 at 8.) Dr. Floss, however, after reviewing Plaintiff's medical records, states Plaintiff did not have diabetes prior to May 2013. (Doc. No. 67 at 13.) Dr. Floss opines the decision not to prescribe diabetic medication before that date was medically proper. (*Id.*) Plaintiff offers no evidence or argument to contradict the testimony of Dr. Floss.

Based on the foregoing, the Court recommends dismissal of Plaintiff's diabetic care claims against Defendants Campbell and Obi.

> 6.     Heat Exposure

In their Motion, Defendants ask the Court to take judicial notice of the fact that it previously adjudicated Plaintiff's exposure to high temperature claims. (Doc. No. 64 at 1.) The Court previously recommended dismissal of Plaintiff's claim that Defendant Kitrell allowed him to be exposed to high temperatures, for failure to state a claim on which relief may be granted. (Doc. No. 7 at 6.) That recommendation was adopted by the district court. (Doc. No. 8.)

Now, the Court will grant Defendants' request and take notice of its earlier adjudication. Plaintiff's high temperature claims against Dr. Obi should, therefore, be dismissed without prejudice for failure to state a claim on which relief may be granted.

## V.     CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1.     The Clerk of Court alter the docket to reflect that

    A.     'N. Obi' is appropriately 'Nwannem Obi-Okoye.'

    B.     'G. Campbell' is 'Geraldine Campbell.'

    C.     'Ball' is 'Don Ball.'

2.     Defendants' Motion for Summary Judgment (Doc. No. 64) be GRANTED.

3.     Defendant Don Ball be DISMISSED without prejudice due to Plaintiff's failure to

exhaust administrative remedies against him.

4.      Plaintiff's heat exposure claims against Defendant Nwannem Obi-Okoye be DISMISSED without prejudice for failure to state a claim upon which relief can be granted.

5.      All other pending claims against Defendants Nwannem Obi-Okoye and Geraldine Campbell be DISMISSED with prejudice.

6.      The Court should certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this Recommendation and the accompanying Judgment would not be taken in good faith.

IT IS SO RECOMMENDED this 21st day of January, 2015.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE